UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MOHAMMAD YASIN REZAEE,
A-244-547-174,

          Petitioner,

    v.

CHRISTOPHER CHESTNUT, et. al.,

          Respondents.

No. 1:26-CV-00746-DC-DMC-HC

FINDINGS AND RECOMMENDATIONS

Petitioner, an immigration detainee who is represented by counsel filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Respondents filed an answer, ECF No. 20, and Petitioner filed a reply, ECF No. 21.

**I. BACKGROUND**

According to the Petitioner, he is a citizen of Afghanistan and "a member of the Hazara ethnic minority." ECF No. 8, pg. 8. Petitioner contends that he filed an application for asylum. See id. Petitioner asserts that he has been in detention since June 24, 2025, and has not been provided with a bond hearing throughout his detention. See id. Petitioner argues that such detention therefore violates his due process rights. See id. generally.

Respondents contend that Petitioner's detention is mandatory "pursuant to 8 U.S.C. § 1225(b)(1)(A)" and Petitioner is therefore ineligible for bond hearing. ECF No. 20, pg.

1

1. According to Respondents, on May 22, 2024, Petitioner "applied for entry into the United States at a designated port of entry." Id. Respondents assert that Petitioner's notice to appear, issued on May 22, 2024, was dismissed on June 24, 2025, the same day Petitioner was detained "based on the Petitioner not being entitled to regular removal proceedings." Id. at 2 (citing Respondent Exhibit 4 and 8 C.F.R. § 1239.2(c)). Respondents contend that Petitioner appealed that decision and the decision remains pending. See id.

## II. DISCUSSION

The undersigned finds that Petitioner has a protectable liberty interest in remaining out of custody, and he was deprived of this liberty without due process when re-detained without notice or a hearing.  Accordingly, the undersigned will recommend granting Petitioner's petition for writ of habeas corpus because his detention violates due process and recommend that Petitioner be immediately released from Respondents' custody under the same conditions he was released previously.

As a preliminary matter, the undersigned finds that, according to the Executive Office for Immigration Review Automated Case Information website,[1] Petitioner has no final order of removal, pending appeals, nor hearing dates set. Additionally, Respondents state that Petitioner's notice to appear was dismissed "based on the Petitioner not being entitled to regular removal proceedings." Respondents provide Exhibit 4, the order granting the motion to dismiss, which contains the following information:

> The U.S. Department of Homeland Security has represented that circumstances of the case have changed after the notice to appear was issued to such an extent that continuation is no longer in the best interest of the government. The Department has further indicated that the Respondent is not entitled to removal proceedings. 8 C.F.R. 1239.2(c).

> ECF No. 20-4, pg. 3.

The undersigned notes that there is no additional information provided by parties about what the change in circumstances was nor the reason that Petitioner is not entitled to

---

[1] The Court may take judicial notice pursuant to Federal Rule of Evidence 201 of matters of public record.  See U.S. v. 14.02 Acres of Land, 530 F.3d 883, 894 (9th Cir. 2008).

removal proceedings. Respondents do not make any argument that this Court should consider this dismissal, nor how such dismissal could be considered, within the scope of this habeas petition.

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. Hernandez v. Session, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. Id. at 693–94. Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). The Court considers each step in turn.

### A.    Liberty Interest

As for the first step, the Court finds Petitioner has shown he has a protectable liberty interest. See Morrissey, 408 U.S. at 482. "Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025). "Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'" Id. (quoting Morrissey, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen release from custody pending immigration proceedings has a protected liberty interest

3

in remaining out of custody." Salcedo Aceros v. Kaiser, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." R.D.T.M. v. Wofford, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

As a preliminary matter, the Court finds unpersuasive the Respondents' argument that Petitioner cannot assert a liberty interest because he is an "applicant for admission" under § 1225 and therefore subject to mandatory detention, ineligible for release, parole, or a custody redetermination hearing. First, Respondents claim Petitioner is inedible for release without explaining how, if he is ineligible for release, Petitioner was previously released on his own recognizance. Petitioner was initially detained upon his arrival to the United States at a port of entry and found to be "inadmissible to the United States pursuant to section 212(a)(7)(A)(i)(I) of the INA as amended." ECF No. 20-1, pg. 2. That same day, Petitioner was "served an I-862 Notice to Appear and paroled into the United States pending 240 proceedings by the Immigration Judge." Id. None of the documents provided indicate what statute Petitioner was paroled under. Neither party provides information about what the basis of Petitioner's parole was.

Generally, parole is available for noncitizens pursuant to §1226 or §1182 (d)(5)(A). Thus, Respondents are either incorrect that Petitioner is detained pursuant to § 1225 because his prior release indicates that Petitioner's detention is governed by § 1226, or Petitioner's detention is pursuant to §1225 and Petitioner was paroled under §1182 (d)(5)(A). The undersigned finds that regardless of which statute Petitioner was afforded parole under, Petitioner has a protected liberty interest. The Court finds Petitioner was released from immigration detention, which created a reasonable expectation that he would be entitled to retain his liberty absent a material change in circumstances. Petitioner was initially released, on his own recognizance. This language sets a clear and reasonable expectation that Petitioner would be entitled to retain his liberty absent a material change in circumstances. Respondents do not allege that Petitioner violated those conditions nor argue that any change circumstances gave rise to

4

Petitioner's re-detention. Instead, Respondents merely rely on the claim that Petitioner is subject to mandatory detention pursuant to § 1225(b)(2).

Petitioner's detention goes against United States Supreme Court precedent which recognizes that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued release. See Morrissey, 408 U.S. 471 at 482. Given this, the Court finds Petitioner has established his liberty interest in his continued release.

**B.      Procedure Due**

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. To determine such, the Court considers three factors to determine the process due prior to deprivation of Petitioner's liberty: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews v. Eldridge, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Petitioner has established his due process rights were violated.

First, Petitioner has a substantial private interest in remaining free from detention. Petitioner has lived in the United States for over a year and was released to a sponsor in California. See ECF No. 20-1, pg. 2.  Despite that, Petitioner has now been detained for over nine months without any evidence of being afforded a bond hearing. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. See Manzanarez v. Bondi, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly); see also Colina-Meira v. Lyons, No. 1:25-cv-1716 CSK P, 2025 LX 673205 (E.D. Cal. Dec. 31, 2025).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any bond or custody redetermination hearing. "[T]he risk of erroneous deprivation is high when, as here, parole is revoked without written notice or reason." Chavarria, 2025 WL

3533606, at *3; see also A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing."). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Respondents do not contend that Petitioner is or was a flight risk or a danger to the community. Indeed, Respondents appear to concede this, arguing that "[e]ven if Petitioner specifically does not appear to be a danger or flight risk, the Government has a strong interest in effectuating the 'system Congress devised.'" ECF No. 20, pg. 7 (internal citations omitted). Thus, Court finds there is a serious likelihood Petitioner will be erroneously deprived of his liberty interest. Moreover, without any procedural safeguards to determine whether his re-detention was justifiable, the probative value of additional procedural safeguards is high. R.D.T.M., 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. See Garcia v. Andrews, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). This Court finds the government has an interest in enforcing immigration laws but Respondents' interest in detaining Petitioner without notice or a hearing here is low. See Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025). Detention hearings in immigration courts are routine and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. Even if Respondents believed they had a proper reason to detain Petitioner, such decision on their part would warrant written notice and a pre-detention hearing rather than automatic detention. See E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process"). In addition, the government's interest is even lower because Petitioner was previously released after immigration officials determined he was not a flight risk or danger to the community, and there is no evidence that he has a criminal record.

On balance, the Court finds the Matthews factors weigh in favor of finding Petitioner is entitled to notice and a bond hearing, and Petitioner should have been provided such notice and a hearing before he was re-detained. The Due Process Clause requires that, at a minimum, "that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted). In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a pre-deprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases). Respondents identify no reason why written notice was not provided or why a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025).

Further, though the record is unclear as to under what statutory mechanism Petitioner was granted parole, the undersigned finds Petitioner was denied due process, even if his detention is governed by §1225. In that situation, Petitioner's parole was pursuant to §1182 (d)(5)(A) and terminating such parole requires a determination that parole is accomplished or no longer warranted. Given that purpose of parole itself is determined on a "case-by-case basis," the undersigned finds that revocation requires an individualized determination that Petitioner is no longer suitable for parole. 8 U.S.C. §1182(d)(5).  Moreover, 8 CFR 212.5 (e) prescribes a specific process for revocation of §1182(d)(5) parole:

> Termination of parole —
>> (1) Automatic. Parole shall be automatically terminated without written notice
>>> (i) upon the departure from the United States of the alien, or,
>>> (ii) if not departed, at the expiration of the time for which parole was authorized, and in the latter case the alien shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required.
>> (2) (i) On notice. In cases not covered by paragraph (e)(1) of this section, upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this

7

section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole. When a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified. Any further inspection or hearing shall be conducted under section 235 or 240 of the Act and this chapter, or any order of exclusion, deportation, or removal previously entered shall be executed. If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed in paragraph (a) of this section the public interest requires that the alien be continued in custody.

8 CFR 212.5 (e).

Respondents do not claim that a change in circumstance resulted in the determination by an official listed in 8 CFR 212.5 (a) that "neither humanitarian reasons nor public benefit warrants" Petitioner's continued parole, nor that Petitioner was provided notice of such determination, as required by the statute. 8 CFR 212.5 (e). Absent a determination and notice of such determination, Respondents failed to provide Petitioner with the process afforded by 8 CFR 212.5 (e)(2), as required by 8 CFR 212.5 (e)(1)(ii). Accordingly, the undersigned finds that, even if Petitioner is subject to § 1225(b)(2), Respondents revoked Petitioner's parole without providing Petitioner the process due and will therefore recommend the petition be granted and Petitioner be released immediately upon the same terms of his prior release.

## III. CONCLUSION

Based on the foregoing, the undersigned recommends:

1. It is RECOMMENDED that Petitioner's petition for writ of habeas corpus, ECF No. 1, be GRANTED as Petitioner's detention violates due process;

2. It is RECOMMENDED that Petitioner Mohammad Yasin Rezaee, A-224-547-174, be RELEASED IMMEDIATELY from Respondents' custody upon the same conditions as his prior release, with his belongings. Respondents shall not impose any additional restriction on him, such as electronic monitoring, unless that is determined to be necessary at a future pre-deprivation/custody hearing;

8

3.      It is RECOMMENDED that Respondents be ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with 8 CFR 212.5 (e)(1)(ii) or constitutional protections, including seven (7) day notice and a hearing before a neutral fact-finder where Respondents show: (a) there are material changed circumstances which demonstrate that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  Thus, within 7 days after being served with these findings and recommendations, any party may file written objections with the Court.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  April 14, 2026

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE